Filed 12/5/13  Ratliff v. EMC Mortgage CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LONNIE RATLIFF, JR., <br><br>     Plaintiff and Appellant, <br><br> v. <br><br> EMC MORTGAGE, LLC, et al., <br><br>     Defendants and Respondents. | A132886 <br><br> (Alameda County <br>   Super. Ct. No. RG10511310) |

Lonnie Ratliff, Jr., (appellant), in propria persona, appeals from judgments entered after the trial court sustained EMC Mortgage's (EMC) demurrer without leave to amend, sustained Robert J. Jackson, Esq., and Robert J. Jackson and Associates's (together, the Jacksons) demurrer without leave to amend, and granted the Jacksons's special motion to strike under Code of Civil Procedure section 425.16.  Appellant contends the trial court erred in ruling that:  (1) the doctrine of res judicata barred his claims against EMC; and (2) he failed to state a valid cause of action against the Jacksons.  We reject the contentions and affirm the judgments.

**FACTUAL AND PROCEDURAL BACKGROUND**[1]

Appellant, the owner of a real property located in Oakland, California, (the Property) obtained a $630,000 residential loan (the Loan) against the Property from

---

[1] Because this case is on appeal from the sustaining of demurrers, our statement of facts is based on the allegations of appellant's first amended complaint filed in this action and matters of which the trial court took judicial notice.  (See *Crowley v. Katleman* (1994) 8 Cal.4th 666, 672; *Saks v. Damon Raike & Co*. (1992) 7 Cal.App.4th 419, 422.)

1

Mortgage Store Financial, Inc. (Mortgage Store), and a Deed of Trust was recorded on October 24, 2003. The Deed of Trust identified Mortgage Electronic Registration Systems, Inc. (MERS) as the beneficiary and First American Title Insurance Company as the Trustee. A Substitution of Trustee was recorded on July 22, 2005, substituting Executive Trustee Services, Inc. (ETS), as the Trustee.

Thereafter, appellant defaulted on the Loan and a Notice of Default was recorded on February 7, 2006, providing that appellant was in arrears in the amount of $26,222.37. A Notice of Trustee's Sale in connection with the Deed of Trust was recorded on August 20, 2007, setting a non-judicial foreclosure sale for September 11, 2007. In a letter dated August 20, 2007, GMAC Mortgage, the servicing agent for the mortgage, notified appellant that EMC was going to be the new servicing agent effective September 4, 2007.

Appellant attended the foreclosure sale of the Property, which took place on October 2, 2007. Appellant told the auctioneer agent that he wished to buy back the Property, and the agent said he was willing to sell it back to appellant for $620,000 if appellant could procure a loan within a certain period of time. Based on that representation, appellant worked on procuring a loan, only to find out a few weeks later that a Trustee's Deed Upon Sale had recorded on October 12, 2007, providing that EMC was the high bidder at the October 2, 2007 foreclosure sale and had purchased the Property for $620,000.

While attempting to take possession of the Property, and in an effort to evict appellant, EMC initiated an unlawful detainer action on November 19, 2007. EMC thereafter voluntarily dismissed the action. EMC filed a second unlawful detainer action on February 8, 2008, and the Jacksons were substituted in as counsel for EMC in the action. The trial court dismissed the action without prejudice on August 6, 2008. EMC, still represented by the Jacksons, filed an unlawful detainer action against an individual named Steve Jones "even though," according to appellant, "no [such person] lived on the [P]roperty." The Jacksons voluntarily dismissed this action on August 14, 2008. The

2

trial court found that EMC's action against Jones was a " 'fraudulent filing,' " and sanctioned the Jacksons $1,500.

### *The Prior Action*

After two opportunities to amend his original complaint to state a cognizable cause of action, appellant filed a second amended complaint on May 5, 2009, asserting claims against Mortgage Store, MERS, EMC, and ETS. He alleged that the foreclosure sale that took place on October 2, 2007 was void or voidable because the auctioneer agent made a false promise to him, and because ETS, as the trustee that oversaw the sale, failed to comply with laws requiring notice to the mortgagor prior to foreclosure sale, and also violated its duties and obligations as trustee. He alleged the following five causes of action against all defendants: (1) setting aside foreclosure; (2) cancellation of deed; (3) civil conspiracy; (4) fraudulent, illegal, and unfair business practices; and (5) quiet title.

EMC filed a demurrer to the second amended complaint, and on July 30, 2009, the trial court, Judge Ronni MacLaren, sustained the demurrer without leave to amend. The trial court ruled, "All of [appellant's] claims are based on the allegation that there was irregularity in the foreclosure sale that resulted in EMC obtaining title to the [P]roperty. [Appellant] claims that if EMC had not acquired title to the [P]roperty, it would have gone to an unidentified bank, and [appellant] might have been able to repurchase it from the bank. [Appellant] claims he was told by the auctioneer that he would be able to repurchase the property, but he does not allege that the auctioneer had authority to speak for the bank or EMC. The facts do not show that [appellant] has any enforceable right to reaquire the [P]roperty . . . [Appellant] cannot establish the element of causation, which is fatal to all of his claims based on loss of the [P]roperty." The trial court further found that it was not reasonably likely appellant would be able to state a viable claim against EMC if leave to amend was granted. The trial court dismissed the second amended complaint with prejudice, and appellant did not appeal the trial court's decision.

### *Instant Action*

On April 23, 2010, appellant filed a new complaint (the Instant Action) against EMC and MERS, seeking to undo the October 2, 2007 foreclosure sale. On June 9, 2010,

appellant voluntarily dismissed MERS from the action. Appellant then filed the operative first amended complaint (FAC) on March 14, 2011, naming EMC and the Jacksons as defendants.

Appellant alleged in his FAC that EMC conducted an illegal trustee's sale and sold the Property back to itself without providing proper notice to appellant. He alleged that EMC made "promises and representations" "that they would abide by the laws of the State of California," "with the intent to induce [appellant] to (1) enter the Note and Deed of Trust and (2) refrain from taking legal action to prevent [EMC] from selling his home at any future trustee's sale." He alleged as to the Jacksons that they "conspir[ed] among[] themselves and out of frustration and a desire to quickly obtain the eviction of [appellant] from the [Property], filed an Unlawful Detainer against a party named 'Steve Jones,' . . . [knowing] . . . there was no 'Steve Jones' in the [Property]. They intentionally filed a bogus case and actually succeeded in the process as far as having a Writ of Possession issued."

Appellant alleged nine causes of action against EMC: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) fraud and deceit; (4) wrongful foreclosure; (5) abuse of process; (6) unfair business practices; (7) declaratory relief; (8) injunctive relief; and (9) quiet title. He alleged three of those causes of action — abuse of process, unfair business practices, and injunctive relief — also against the Jacksons.

On April 18, 2011, EMC filed a demurrer to appellant's FAC on various grounds, including the ground that all of appellant's claims against EMC were barred by the doctrine of res judicata. On April 20, 2011, the Jacksons filed their own demurrer to appellant's FAC and a special motion to strike the FAC under Code of Civil Procedure section 425.16. On July 20, 2011, the trial court issued a ruling on both demurrers and the Jacksons's motion to strike. In sustaining EMC's demurrer without leave to amend, the trial court stated, "Each of the reasons proposed by [EMC] in its moving papers has merit and the Court could have granted [EMC's] motion on any one of the grounds presented. However, the most significant ground was that [appellant] has already had the

4

issues in our present case decided by Judge MacLaren. Although [appellant] has changed some of the theories and structure of his complaint, the relief sought and the issues in dispute were resolved by Judge MacLaren's order."

In sustaining the Jacksons's demurrer without leave to amend and granting their motion to strike, the trial court stated, "In addition to the grounds described in their moving papers each of which has merit and could justify sustaining the demurrers, the most significant basis for the demurrer and motion to strike is that [appellant] is suing these [d]efendants because they filed a lawsuit on behalf of their clients to obtain possession of the property after [appellant's] default. That action of using the court to obtain relief is protected activity."

The trial court ordered EMC and the Jacksons to prepare and submit proposed orders and judgments consistent with its order within 10 days of its order. On July 26, 2011, the trial court signed an order sustaining the Jacksons's demurrer to the FAC without leave to amend and granting their motion to strike. On August 2, 2011, the trial court signed EMC's proposed order and judgment granting EMC's demurrer, dismissing the FAC with prejudice, and entering judgment in favor of EMC. On August 8, 2011, appellant filed a Notice of Appeal and checked the box indicating he was appealing from a "Judgment of dismissal after an order sustaining a demurrer." Judgment was entered in favor of the Jacksons on March 2, 2012.

**DISCUSSION**

***1. Demurrer Standard***

When reviewing a judgment dismissing an action after an order sustaining a demurrer without leave to amend, we review " 'the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory, such facts being assumed true for this purpose. [Citations.]' [Citation.]" (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42; *Akopyan v. Wells Fargo Home Mortgage, Inc.* (2013) 215 Cal.App.4th 120, 130–131.) "[W]e treat the demurrer as admitting the complaint's well-pleaded allegations of material fact, but not its contentions, deductions or conclusions of law." (*Ross v.*

5

*RagingWire Telecommunications, Inc.* (2008) 42 Cal.4th 920, 924.) "In addition, we give the complaint a reasonable interpretation, and read it in context." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) "We will affirm the ruling if there is any ground on which the demurrer could have been properly sustained. [Citation.]" (*Intengan v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th 1047, 1052.)

When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse. [Citation.]" (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.) " '[W]here the nature of the plaintiff's claim is clear, and under substantive law no liability exists, a court should deny leave to amend because no amendment could change the result.' [Citation.]" (*San Mateo Union High School Dist. v. County of San Mateo* (2013) 213 Cal.App.4th 418, 441.) " '[T]he burden of proving a reasonable possibility exists that a complaint's defects can be cured by amendment rests "squarely on the plaintiff." ' [Citation.]" (*Whittemore v. Owens Healthcare–Retail Pharmacy, Inc.* (2010) 185 Cal.App.4th 1194, 1199.)

### 2. EMC

### a. Res judicata

Appellant contends the doctrine of res judicata did not bar his claims against EMC. We disagree.

" 'Under the doctrine of res judicata, a valid, final judgment on the merits is a bar to a subsequent action by parties or their privies on the same cause of action.' " (*Villacres v. ABM Industries Inc*. (2010) 189 Cal.App.4th 562, 575.) " ' " 'If the matter was within the scope of the action, related to the subject matter and relevant to the issues, so that it *could* have been raised, the judgment is conclusive on it. . . . The reason for this is manifest. A party cannot by negligence or design withhold issues and litigate them in consecutive actions. Hence the rule is that the prior judgment is res judicata on matters which were raised or could have been raised, on matters litigated or litigable. . . .' " ' [Citation.]" (*Id*. at p. 576; see *Bullock v. Philip Morris USA, Inc.* (2011) 198 Cal.App.4th 543, 557 ["[r]es judicata not only precludes the relitigation of issues that were actually

6

litigated, but also precludes the litigation of issues that could have been litigated in the prior proceeding"]; *Federal Home Loan Bank of San Francisco v. Countrywide Financial Corp.* (2013) 214 Cal.App.4th 1520, 1529 [same].)

" 'The doctrine of res judicata rests upon the ground that the party to be affected, or some other with whom he is in privity, has litigated, or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate it again to the harassment and vexation of his opponent.' [Citation.]" (*Pollock v. University of Southern California* (2003) 112 Cal.App.4th 1416, 1427.) "The application of the doctrine in a given case depends upon an affirmative answer to these three questions: (1) Was the issue decided in the prior adjudication identical with the one presented in the action in question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea is asserted a party to or in privity with a party to the prior adjudication? [Citations.]" (*Levy v. Cohen* (1977) 19 Cal.3d 165, 171; see *In re Marriage of Modnick* (1983) 33 Cal.3d 897, 904, fn. 6.)

This case yields "yes" answers to each of these three questions. First, the issues as to EMC in the Instant Action were the same as those in the Prior Action. In both actions, appellant sought to set aside the foreclosure sale and cancel the deed, and alleged that EMC had engaged in fraudulent or unlawful acts in order to obtain title to the Property. Both actions involved the same Loan and Deed of Trust, the same 2007 foreclosure sale, and the same real property. Moreover, the primary right at issue was the same: appellant's right to reacquire title to the Property. (See *Le Parc Community Assn. v. Workers' Comp. Appeals Bd.* (2003) 110 Cal.App.4th 1161, 1170 ["California law defines a 'cause of action' for purposes of the res judicata doctrine by analyzing the primary right at stake"].)

Second, the judgment in the Prior Action was a final judgment on the merits. An order sustaining a demurrer without leave to amend is on the merits and will have res judicata effect unless "the pleading defects are 'technical or formal' and can be corrected by a new pleading. . . ." (*Perez v. Roe 1* (2006) 146 Cal.App.4th 171, 184.) A judgment will support the application of res judicata where the judgment follows the sustaining of a

7

demurrer "on a ground of substance" or "where the demurrer sets up the failure of the facts alleged to establish a cause of action, and the same facts are pleaded in the second action." (*Goddard v. Security Title Ins. & Guar. Co*. (1939) 14 Cal.2d 47, 52; see *Keidatz v. Albany* (1952) 39 Cal.2d 826, 828 [judgment is "on the merits to the extent that it adjudicates that facts alleged do not constitute a cause of action, and will, accordingly, be a bar to a subsequent action alleging the same facts"]; *Pollock v. University of Southern California*, *supra*, 112 Cal.App.4th at pp. 1427–1428 ["fact that the [judgment in the prior action] resulted from the sustaining of a general demurrer does not preclude application of the res judicata doctrine"].) The judgment in favor of EMC in the Prior Action followed orders sustaining a demurrer without leave to amend on the ground that appellant had no "enforceable right to reacquire the [P]roperty," and that he could not "establish the element of causation." Thus, the judgment in the Prior Action was a final judgment on the merits.

Third, EMC was a party in the Prior Action. Because all three criteria for application of res judicata were satisfied, the trial court did not err in ruling that the Prior Action operated as res judicata to bar the Instant Action against EMC.

### b. Claims against EMC

Even assuming the doctrine of res judicata did not bar all of appellant's causes of action against EMC, we would conclude the trial court did not err in sustaining EMC's demurrer without leave to amend. Appellant challenges the trial court's order sustaining EMC's demurrer only as to several causes of action—fraud and deceit, wrongful foreclosure, unfair business practices, and abuse of process.[2] We will briefly address each of appellant's arguments.

---

[2] Appellant raises no cognizable argument as to the remaining causes of action — breach of contract, breach of implied covenant of good faith and fair dealing, declaratory relief, injunctive relief, and quiet title. Thus, we need not, and will not, address the propriety of the trial court's ruling as to those causes of action. We also note that appellant raised two new theories that he did not raise below—"promissory and equitable estoppel." We decline to address these two new claims on the ground that theories not raised in the trial court cannot be asserted for the first time on appeal. (See e.g.,

8

First, appellant asserts he stated a valid cause of action for fraud and deceit based on the alleged misrepresentation EMC made regarding its "intent to comply with California law as required by the [Deed of Trust]." While liability for fraud may be based on a promise that is made without any intention of performing it (Civ. Code, § 1710, subd. (4)), a plaintiff seeking to establish a cause of action for false promise must also plead facts showing an intention by the promisor, at the time of the promise, not to keep it. (*Tyco Industries, Inc. v. Superior Court* (1985) 164 Cal.App.3d 148, 156.) Here, appellant not only failed to allege in his FAC that EMC intended not to keep a promise, but he also failed to identify what promise EMC made and how EMC failed to keep that promise. He also did not allege that EMC was a party to the Deed of Trust and therefore bound by it. On appeal, he does not state how he can amend his complaint to allege sufficient facts to support the cause of action. Thus, the trial court did not err in ruling that EMC's demurrer as to the fraud and deceit cause of action should be sustained without leave to amend.

Second, appellant argues he alleged sufficient facts to support a cause of action for wrongful foreclosure. A condition precedent to any cause of action arising from an alleged wrongful foreclosure is that the borrower must tender or offer to tender a sum sufficient to cure the default. (*United States Cold Storage v. Great Western Savings & Loan Assn.* (1985) 165 Cal.App.3d. 1214, 1222.) "It would be futile to set aside a foreclosure sale on the technical ground that notice was improper, if the party making the challenge did not first make full tender and thereby establish his ability to purchase the property." (*Id*. at p. 1225.) Here, appellant failed to allege—and does not assert that he can amend the FAC to allege—that he was willing and had the present ability to tender the full amount of indebtedness that was outstanding under the Deed of Trust.

Relying on *Onofrio v. Rice* (1997) 55 Cal.App.4th 413, 424, for the proposition that tender " 'may not be required where it would be inequitable to do so,' " appellant suggests that tender was not required in this case. The case, however, does not support

*Greenwich S.F., LLC v.* Wong (2010) 190 Cal.App.4th 739, 767 [it is unfair, both to the trial court and to the opposing litigants, to permit a change of theory on appeal].)

his position. There, the court stated that tender may not be required where "the person making the claim has a counter-claim or set-off against the beneficiary," such that "they offset each other," or where "the action attacks the validity of the underlying debt." (*Id.* at p. 424.) Here, it was undisputed that appellant had defaulted on the Loan, and there was no allegation that the debt was in any way invalid, such that requiring tender would be inequitable. The trial court did not err in sustaining appellant's cause of action for wrongful disclosure without leave to amend.

Third, appellant contends he stated a valid cause of action for unfair business practices. In his FAC, appellant alleged in a conclusory manner: "The callous insensitive, reckless, and illegal manner in which the Defendants treated [him] and the Court . . . constitute unfair competition and a violation of the Unfair Business Practices Act." A plaintiff alleging unfair business practices, however, must state "with reasonable particularity" the facts supporting the violation. (*Khoury v. Maly's of California, Inc.* (1993) 14 Cal.App.4th 612, 619.) Demurrer was properly sustained as to this cause of action because the FAC identified no particular section of the statutory scheme that was violated and failed to describe with any reasonable particularity the facts supporting any violation.

Fourth, appellant challenges the trial court's ruling as to the cause of action for abuse of process in which he alleges that EMC engaged in abuse of process by filing a "bogus" unlawful detainer action against him. As set forth in detail below in our discussion of the same cause of action as to the Jacksons, who represented EMC in the unlawful detainer action, all of EMC's acts in filing the unlawful detainer action were protected by the litigation privilege of Civil Code section 47. The trial court did not err in sustaining EMC's demurrer without leave to amend as to this cause of action.

### 3. The Jacksons

### a. Propriety of the appeal

Preliminarily, we address the Jacksons's argument that the appeal must be dismissed as "entirely defective and improper as against [them]" because appellant did not specify in his Notice of Appeal that he was appealing from a judgment entered in

10

favor of the Jacksons. As noted, the trial court ordered EMC and the Jacksons to prepare proposed orders and judgments within ten days of its July 20, 2011 order, yet only EMC complied by submitting a proposed judgment, which the trial court signed on August 2, 2011. The Jacksons submitted only a document entitled proposed "order," which the trial court signed on July 26, 2011. Thus, as the Jacksons correctly point out, there was no "judgment" against the Jacksons at the time appellant filed a Notice of Appeal on August 8, 2011 and checked the box indicating he was appealing from a "Judgment of dismissal after an order sustaining a demurrer."

A Notice of Appeal, however, is to be liberally construed in favor of its sufficiency, "so as to protect the right to appeal if it is reasonably clear what appellant was trying to appeal from and where the respondent could not possibly have been misled or prejudiced." (*Luz v. Lopes* (1960) 55 Cal.2d 54, 59; *Geffcken v. D'Andrea* (2006) 137 Cal.App.4th 1298, 1307.) Here, the trial court heard EMC's demurrer and the Jacksons's demurrer and motion to strike on the same day and issued one ruling that resolved all issues among all parties. Thus, when appellant stated he was appealing from a "Judgment of dismissal after an order sustaining a demurrer," and did not specify a date of any order or judgment, it was reasonably clear that he was appealing from the trial court's order disposing of all of the issues among the parties, i.e., its order sustaining the parties' demurrers without leave to amend, and the Jacksons's motion to strike. There is nothing in the Notice of Appeal suggesting that appellant intended to appeal only as to EMC. He served all parties with the Notice of Appeal and his opening brief in which he addressed his claims against both EMC and the Jacksons. The Jacksons in turn filed a respondents' brief in which they addressed the merits of the appeal. Accordingly, we liberally construe appellant's Notice of Appeal to have incorporated the trial court's orders as to the Jacksons.

The Jacksons also assert the appeal as to them was premature because judgment was not entered in their favor until March 2, 2012, and appellant filed the Notice of

11

Appeal on August 8, 2011.[3]  We reject this argument and will construe the Notice of Appeal to have been filed after the judgment in favor of the Jacksons was entered.  (Calif. Rules of Court, rule 8.104(d)(2) ["The reviewing court may treat a notice of appeal filed after the superior court has announced its intended ruling, but before it has rendered judgment, as filed immediately after entry of judgment"].)

### b. Claims against the Jacksons

Turning to the merits of appellant's appeal as to the Jacksons, we conclude the trial court did not err in sustaining the Jacksons's demurrer without leave to amend and granting their motion to strike.  Appellant first contends he stated a valid cause of action for abuse of process against the Jacksons for their behavior in "fil[ing] a bogus unlawful detainer complaint" against Steve Jones.  However, the statute of limitations for an abuse of process cause of action is one year.  (See Code Civ. Proc., § 340, subd. (c); *Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 886.)  The alleged abuse of process occurred on July 7, 2008, when the Jacksons filed the unlawful detainer action against Steve Jones, yet appellant did not assert his abuse of process claim against the Jacksons until March 14, 2011.  The claim is therefore time-barred.[4]

Second, appellant asserts for the first time in his reply brief that the trial court erred in ruling that all of his claims against the Jacksons were barred by the litigation privilege.  When an opening brief fails to present pertinent or cognizable legal argument, discussion by the reviewing court is unnecessary.  (*Landry v. Berryessa Union School*

---

[3]  The Jacksons stated in the respondents' brief filed March 16, 2012, that the trial court had not yet entered judgment in their favor.  However, on November 15, 2013, 12 days before this matter was scheduled for oral argument, the Jacksons filed a motion requesting that we augment the record with a judgment entered on March 2, 2012, in their favor and against appellant in the Instant Action.  We hereby grant the motion to augment.

[4]  Without citation to any authority, appellant simply states, "The one-year statute of limitations does not apply."  We "need not consider an argument for which no authority is furnished." (*Dabney v. Dabney* (2002) 104 Cal.App.4th 379, 384; *Heiner v. Kmart Corp*. (2000) 84 Cal.App.4th 335, 350-351.)

12

*Dist*. (1995) 39 Cal.App.4th 691, 699-700.)  Even assuming, however, that the issue is properly before us, we would reject the contention.

Communications in a "judicial proceeding" are subject to the "absolute" privilege of Civil Code section 47, subdivision (b).  (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 360-361.)  The filing of pleadings in judicial actions falls squarely within the litigation privilege of the statute.  (*Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 770.)  Moreover, "communications made in connection with litigation do not necessarily fall outside the [litigation] privilege simply because they are, or are alleged to be, fraudulent, perjurious, unethical, or even illegal.  This is assuming, of course, that the communications are 'logically related' to the litigation."  (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 920.)  In *Kashian v. Harriman*, the court concluded the communications in that case were privileged because they were "not only related to the litigation, [but] they *were* the litigation, or more accurately, the pleadings in the litigation."  (98 Cal.App.4th at p. 920.)  Similarly, here, because appellant did not allege any conduct by the Jacksons other than their communications of filing an allegedly "bogus" unlawful detainer action, the trial court did not err in ruling that all of appellant's claims against the Jacksons were barred by the litigation privilege.

## DISPOSITION

The trial court's judgments in favor of EMC and the Jacksons are affirmed. Respondents EMC and the Jacksons shall recover their costs on appeal.

_____

Jenkins, J.

We concur:

_____

McGuiness, P. J.

_____

Siggins, J.