Filed 5/12/14  Rouzbahan v. Fregoso CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ROYA ROUZBAHAN et al., | B243171 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. PC049383) |
| v. | |
| ALYSSA VERONICA FREGOSO et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Malvin D. Sandvig, Judge.  Affirmed with directions.

Roy Legal Group and Raj D. Roy, for Plaintiffs and Appellants, Roya Rouzbahan and Camelia Imani.

Law Offices of Cleidin Z. Atanous and Cleidin Z. Atanous, for Defendants and Respondents, Alyssa Veronica Fregoso and Abel Becerra.

_____

Roya Rouzbahan and her mother, Camelia Imani, appeal from the judgment entered against them in this personal injury action after the jury found by special verdict that the car driven by Alyssa Veronica Fregoso did not hit Rouzbahan. Rouzbahan and Imani contend the evidence at trial established that Fregoso and Abel Becerra, the owner of the vehicle, were liable for negligence and negligent infliction of emotional distress. We affirm. In addition, pursuant to rule 8.276(a)(1) of the California Rules of Court, we impose sanctions on appellants' counsel, Raj D. Roy, for pursuing a frivolous appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Complaint*

In an unverified form complaint filed on October 12, 2010 Rouzbahan and Imani alleged Becerra had negligently entrusted his automobile to Fregoso, who then negligently drove the car in a school zone (in front of Chatsworth High School) on December 5, 2008 and ran into pedestrian Rouzbahan. Imani was present at the scene of the accident and saw her daughter Rouzbahan hit by the car, causing her serious emotional distress. The complaint prayed for compensatory damages according to proof.

### 2. *The Testimony at Trial*

The case was tried to a jury for six days in late May 2012. Rouzbahan, who was 17 years old at the time of the accident, testified she left Chatsworth High School after school (between 2:20 p.m. and 2:30 p.m.) on December 5, 2008 and was crossing Lurline Avenue[1] to meet her mother, whose car was parked across the street and who intended to give her a ride home. Rouzbahan had followed the same routine every day after school for the past four months. She did not cross at a corner or use one of the marked crosswalks adjacent to the school site but looked to her right and left before entering the street. When she reached the middle of Lurline Avenue, she heard a car engine; she turned to see where the noise was coming from and was immediately hit by a car.

---

[1] Lurline Avenue runs north to south on the east side of the Chatsworth High School campus.

2

Rouzbahan said she blacked out after being hit, then heard students screaming her name; her mother and another woman picked her up and carried her to her mother's car.

Imani testified during redirect examination[2] that she saw the right front half of Fregoso's car hit Rouzbahan on her right side, causing Rouzbahan to fall to the ground on her left side. After the accident Imani went to her daughter, picked her up and took her to her own vehicle.

Fregoso, who was 18 years old in December 2008, testified she had parked on Mayall Street[3] near Chatsworth High School waiting to pick up her younger sister after school. (Becerra, Fregoso's father, is the registered owner of the car she was driving.) After learning through a text message that her sister did not need a ride, Fregoso started for home. She left her parking spot and made a right turn, heading north, on Lurline Avenue. Fregoso estimated the car was traveling 10 miles per hour or less at this point due to the relatively heavy afterschool traffic. Fregoso saw Rouzbahan to the left front driver's side of the car, crossing the street from west to east. As soon as she saw Rouzbahan, Fregoso braked. According to Fregoso, Rouzbahan fell forward in an easterly direction landing on her knees. Fregoso stopped, got out of her car and asked Rouzbahan if she was all right. Rouzbahan responded, "Yes, I'm fine." Fregoso then saw Rouzbahan run to her mother's car.

Fregoso did not hear, see or feel any impact between her car and Rouzbahan. However, at the time of the incident Fregoso believed she had hit Rouzbahan "because she fell" and told a police officer who had responded to the scene that she had bumped Rouzbahan. Shortly thereafter, someone in a uniform (either a police officer or firefighter/paramedic) asked Fregoso, "Are you sure you hit her because there's no dust

---

[2]    Rouzbahan and Imani failed to designate or augment the appellate record with the transcript of the first day of testimony, May 22, 2012, which included Imani's direct testimony and the initial portion of her cross-examination.

[3]    Mayall Street, which runs from west to east, ends in a T-intersection at Lurline Avenue in front of Chatsworth High. There is a marked crosswalk crossing Lurline Avenue at the intersection.

particles moved [on your car]?" That comment, together with the fact she had not heard, seen or felt any contact; the direction in which Rouzbahan fell; and Rouzbahan's subsequent actions led Fregoso to conclude she had not hit Rouzbahan.

Gabriela Rivadeneria was a 15-year-old freshman at Chatsworth High School at the time of the accident. Rivadeneria testified she was waiting to be picked up by her mother after school on the east side of Lurline Avenue. (Rivadeneria had crossed Lurline Avenue at Mayall Street, using the marked crosswalk.) Rivadeneria saw Rouzbahan move through traffic on the southbound side of Lurline Avenue and walk in front of Fregoso's car without looking. It appeared to Rivadeneria that, as Rouzbahan saw Fregoso's car, "she fell to the floor as if she was going to—like she was scared that she was going to hit her. That's how I saw it." Rivadeneria testified there was no contact between Fregoso's vehicle and Rouzbahan. After Rouzbahan fell, Imani did not come out of her car to help Rouzbahan; and Rouzbahan did not lie in the street unconscious for any period of time. She was up in a few seconds, went over to her mother's car and got in under her own power.

In addition to their own testimony Rouzbahan and Imani's only witness was the custodian of records of Northridge Hospital, who provided a foundation for the introduction of billing records for medical services provided to Rouzbahan. Defense witnesses other than Fregoso and Rivadeneria were Los Angeles Police Officer Steven Smith, who had investigated the accident on December 5, 2008 and prepared a report of the incident; two medical experts (an orthopedic surgeon and a psychiatrist); and an accident reconstructionist.

3. *The Special Verdict Form and the Jury's Verdict*

Counsel for Rouzbahan and Imani proposed a special verdict form, which the court approved and gave (without defense objection) to the jury. Question No. 1 read, "Did ALLYSSA [*sic*] VERONICA FREGOSO hit ROYA ROUZBAHAN with the car she was driving on December 5, 2008?" As plaintiffs' counsel explained in discussing

4

the special verdict form with the court and defense counsel, "[I]f there's no hit, there's nothing else to discuss, and as it says over there, they can go home."

After being fully instructed by the court and directed to return a verdict on special issues,[4] the jury answered Question No. 1, "No." The trial court entered judgment in favor of Fregoso and Abel on June 4, 2012 and awarded costs in the sum of $37,404.85.

## CONTENTION

Rouzbahan and Imani contend the evidence at trial required the jury to find that Fregoso's car hit Rouzbahan and the contrary answer to special verdict question No. 1 was reversible error.

## DISCUSSION

1. *Standard of Review*

We generally apply the familiar substantial evidence test when the sufficiency of the evidence is at issue on appeal. Under this test, "'[W]e are bound by the established rules of appellate review that all factual maters will be viewed most favorably to the prevailing party [citations] and in support of the judgment . . . . "In brief, the appellate court ordinarily looks only at the evidence supporting the successful party, and disregards the contrary showing." [Citation.] All conflicts, therefore, must be resolved in favor of the respondent.'" (*Campbell v. Southern Pacific Co.* (1978) 22 Cal.3d 51, 60; accord, *Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 571.) "When we consider whether the evidence was sufficient to support the jury's verdict, we review the entire record in the light most favorable to the judgment to determine whether there are sufficient facts, contradicted or uncontradicted, to support the judgment. [Citation.] Substantial evidence is evidence that is reasonable and credible. In evaluating the evidence, we accept reasonable inferences in support of the judgment and do not consider

---

[4] Rouzbahan and Imani failed to designate or augment the appellate record with the transcript of the final day of trial, May 31, 2012, which included closing argument and the court's instructions to the jury. The clerk's transcript does not contain a copy of either the jury instructions actually given by the court or the special verdict form.

whether contrary inferences may be made from the evidence." (*Mammoth Lakes Land Acquisition, LLC v. Town of Mammoth Lakes* (2010) 191 Cal.App.4th 435, 462-463.)

However, when the trier of fact has expressly or implicitly concluded the party with the burden of proof did not carry the burden and that party appeals, "'it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment. . . . [¶] Thus, where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."'" (*Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838; accord, *In re I.W.* (2009) 180 Cal.App.4th 1517, 1528.)

"Where, as here, the judgment is against the party who has the burden of proof, it is almost impossible for him to prevail on appeal by arguing the evidence compels a judgment in his favor. That is because unless the trial court makes specific findings of fact in favor of the losing plaintiff, we presume the trial court found the plaintiff's evidence lacks sufficient weight and credibility to carry the burden of proof. [Citations.] We have no power on appeal to judge the credibility of witnesses or to reweigh the evidence." (*Bookout v. State of California ex rel Dept of Transportation* (2010) 186 Cal.App.4th 1478, 1486.)

2. *The Evidence Did Not Require the Jury To Find Fregoso's Car Hit Rouzbahan*

To prevail on their tort actions, it was Rouzbahan and Imani's burden to prove Fregoso's car hit Rouzbahan while Fregoso drove it in a negligent manner. (See, e.g., *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1123 [primary elements in tort action for personal injury are liability, causation and damages]; *Bookout v. State of California ex rel. Dept. of Transportation, supra,* 186 Cal.App.4th at p. 1486 ["[t]he plaintiff has the burden of proving a substantial causal relationship between the defendant's act or

6

omission and the injury"]; see also *Christensen v. Superior Court* (1991) 54 Cal.3d 868, 900 ["[a] plaintiff seeking to recover damages from a negligent defendant must allege a causal connection between the negligence and the plaintiff's injury"].)

Without doubt, there was substantial evidence that would have supported a finding in favor of Rouzbahan and Imani on the disputed question whether Fregoso's vehicle struck Rouzbahan as she was crossing Lurline Avenue: Both Rouzbahan and Imani testified that it did. But Fregoso testified her car did not contact Rouzbahan (although she initially thought it had); and third-party witness Rivadeneria, who was present at the scene and saw the incident, also testified there was no impact between Fregoso's car and Rouzbahan. (As discussed, Fregoso and Rivadeneria also disputed other aspects of Rouzbahan's and Imani's version of events after Rouzbahan fell to the street, including whether Rouzbahan went to Imani's car on her own or was carried there by Imani.) It was well within the jury's right to credit Fregoso and Rivadeneria's version of the events on December 5, 2008 and to disbelieve Rouzbahan and Imani.

Thus, even if the general, substantial evidence standard of review were applicable to the jury's finding that Fregoso did not hit Rouzbahan with the car she was driving, as Rouzbahan and Imani contend, we would be required to affirm the judgment. "'[W]hen a [finding] is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the [finding]. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court.'" (*Western States Petroleum Assn. v. Superior Court, supra*, 9 Cal.4th at p. 571.) "The testimony of a single witness, even if that witness is a party to the case, may constitute substantial evidence." (*Consolidated Irrigation Dist. v. City of Selma* (2012) 204 Cal.App.4th 187, 201; accord, *In re Marriage of Mix* (1975) 14 Cal.3d 604, 614; *Jensen v. BMW of North America, Inc.* (1995) 35 Cal.App.4th 112, 134.)

7

The jury's finding of no impact, however, was also an implicit conclusion that Rouzbahan and Imani had failed to carry their burden of proof on the issue of causation; for, as their counsel said, "If there's no hit, there's nothing else to discuss." Therefore, to secure a reversal Rouzbahan and Imani would have to demonstrate the evidence *compelled* a judgment in their favor as a matter of law. In light of Fregoso's and Rivadeneria's testimony, that is an impossible task: The plaintiffs' evidence was far from "uncontradicted and unimpeached." Accordingly, the judgment in favor of Fregoso and Becerra must be affirmed.

3. *Rouzbahan and Imani's Appeal Is Frivolous and Their Briefs in This Court Misleading; Sanctions Against Their Counsel Are Warranted*

Several days after filing their respondents' brief, Fregoso and Becerra moved for imposition of monetary sanctions of approximately $27,000 against Rouzbahan, Imani and their attorney of record, Raj D. Roy, for filing a frivolous appeal that was intended solely to cause delay.[5] In their motion they argued any reasonable attorney would agree an appeal challenging a jury finding for insufficient evidence was totally and completely without merit when, as here, the only nonparty percipient witness testified consistently with the jury's finding. Yet in his opening brief for Rouzbahan and Imani, Roy omitted entirely any reference to Rivadeneria's testimony, "solely to enable him to make the argument, hoping it would all go unnoticed, or at worst unpunished." In addition, after describing the numerous delays, defaults and extension requests between the filing of the notice of appeal and Rouzbahan and Imani's opening brief (nine days shy of a full year), Fregoso and Becerra asserted the futile appeal was clearly filed as an improper means of postponing payment of the $37,404.85 in costs awarded against them by the trial court.

We requested that Rouzbahan, Imani and Roy file a response to the motion for sanctions concurrently with their reply brief, which they did. Although arguing there

---

[5] In his declaration Fregoso and Becerra's appellate counsel testified he had spent more than 123 hours working on the appeal and stated his billing rate was $200 per hour.

were valid grounds for appealing the judgment entered on the jury's special verdict,[6] neither that response nor the reply brief addressed Rivadeneria's testimony or explained its omission from the recitation of the evidence presented at trial. We gave notice oral argument on the issue of sanctions would be combined with oral argument on the merits of the appeal. (Cal. Rules of Court, rule 8.276(e).)

Code of Civil Procedure section 907 provides, "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." (See Cal. Rules of Court, rule 8.276(a)(1) [Court of Appeal may impose sanctions on a party or an attorney for taking a frivolous appeal or appealing solely to cause delay].) The Supreme Court in *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650, set forth the applicable standard, "[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit."

Considered by itself, Rouzbahan and Imani's argument there was insufficient evidence to support the jury's finding, although unquestionably without merit, might not warrant imposition of sanctions. Their appellate counsel's failure to recognize the correct standard of review when challenging the evidentiary basis for a jury verdict against the party with the burden of proof is not unusual, and hopeless appeals arguing conflicting evidence does not support the factual findings made in the trial court are all too commonplace. "That an appeal lacks merit does not, alone, establish that it is frivolous."

---

[6] The response to the sanctions motion also argued the delays in filing documents necessary for the appellate record were justified by extenuating circumstances and the requests for extensions of time to file the opening brief were based on good cause and approved by this court. The response also contended the fees requested were excessive. In a reply memorandum counsel for Fregoso and Becerra corrected one time entry, explaining it was a typographical error (a 10 rather than a 1) that had not actually been included in calculating the total of 123 hours spent responding to the appeal.

(*Avila v. Continental Airlines, Inc.* (2008) 165 Cal.App.4th 1237, 1261; accord, *Dodge, Warren & Peters Ins. Services, Inc. v. Riley* (2003) 105 Cal.App.4th 1414, 1422.) Appellate counsel Roy's improper prosecution of this appeal, however, goes far beyond simply asserting an entirely unmeritorious claim on behalf of his clients. Notwithstanding the well-established rule requiring a party challenging the sufficiency of the evidence to set forth all material evidence on the point, including evidence harmful to the party's position (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881; *Stewart v. Union Carbide Corp.* (2010) 190 Cal.App.4th 23, 34), Roy's description of the evidence at trial in his opening brief omitted Fregoso's testimony denying her car hit Rouzbahan and failed even to identify Rivadeneria as a trial witness, let alone attempt to explain why her testimony there was no contact between Fregoso's vehicle and Rouzbahan did not doom the appeal. Compounding this misleading description of the record, Roy falsely asserted in his opening brief that Fregoso and Becerra proffered no evidence at trial that contradicted Rouzbahan and Imani's version of the incident. And then, after both the respondents' brief and Fregoso and Becerra's sanctions motion emphasized Rivadeneria's no-contact testimony, the reply brief and Roy's opposition to the motion for sanctions again entirely ignored Rivadeneria, acting for all appearances as if she had never testified at trial.[7] This style of lawyering cannot be condoned. Accordingly, although sanctions are to be "used most sparingly to deter only the most egregious conduct" (*In re Marriage of Flaherty, supra,* 31 Cal.3d at p. 651), we believe imposition of sanctions is fully justified in this case—to be paid directly by Roy himself and not his clients.

---

[7]    Disregarding yet another well-established rule of appellate procedure—that it is appellant's burden to provide this court with a complete and accurate record on appeal (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *Estrada v. Ramirez* (1999) 71 Cal.App.4th 618, 620, fn. 1)—Rouzbahan and Imani failed to provide us with the reporter's transcripts for both the first day of trial testimony (at the very least Imani's direct testimony and the beginning of her cross-examination) and the final day with closing argument and instructions, thereby frustrating any meaningful review of the evidence heard by the jury or the explanation that accompanied the special verdict form.

To determine the appropriate amount of sanctions, we consider the facts in relation to the policy underlying Code of Civil Procedure section 907. (See *Pollock v. University of Southern California* (2003) 112 Cal.App.4th 1416, 1433.) In this context, we have evaluated the declaration submitted by counsel for Fregoso and Becerra concerning the fees incurred in preparing the respondents' brief, together with our own assessment of the difficulty of the issue presented on appeal. Based on all those factors, we conclude the reasonable amount of expenses to award for responding to the frivolous appeal is $10,000 (50 hours at counsel's hourly rate of $200).

Having given Rouzbahan and Imani and their counsel notice this court was considering imposing sanctions, and having afforded them an opportunity to respond both in writing and at oral argument, we conclude that sanctions are proper for pursuing an appeal that is frivolous because it indisputably has no merit. This opinion constitutes a written statement of our reasons for imposing sanctions. (*In re Marriage of Flaherty, supra*, 31 Cal.3d at p. 654; *Pollock v. University of Southern California, supra,* 112 Cal.App.4th at p. 1434; *Westphal v. Wal-Mart Stores, Inc.* (1998) 68 Cal.App.4th 1071, 1083.)

## DISPOSITION

The judgment is affirmed. Fregoso and Becerra are to recover their costs on appeal. In addition, Roy is directed to pay Fregoso and Becerra $10,000 as sanctions for prosecuting a frivolous appeal. The clerk will forward a copy of this opinion to the State Bar of California. (Bus. & Prof. Code, § 6086.7, subd. (a)(3).)

PERLUSS, P. J.

We concur:

ZELON, J.                              SEGAL, J.[*]

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11