[No. F056377. Fifth Dist. Dec. 30, 2009.]

SHIRLEE KEMPS, Plaintiff and Appellant, v.
RICHARD A. BESHWATE et al., Defendants and Respondents.

**COUNSEL**

Wilkins, Drolshagen & Czeshinski, James H. Wilkins and Quentin C. Cedar for Plaintiff and Appellant.

No appearance for Defendant and Respondent Richard A. Beshwate.

Law Offices of Bennett & Sharpe, Inc., Barry J. Bennett, Thomas M. Sharpe, Elaine M. Yama and Heather N. Phillips for Defendant and Respondent Ronald Richard Weber.

Bonetati, Kincaid & Kincaid, Inc., Marilyn L. Bonetati and Michelle C. Edborg for Defendants and Respondents Scott Nelson and S. K. Nelson & Company.

OPINION

**VARTABEDIAN, Acting P. J.**—This is an appeal from an order striking a complaint upon the granting of an anti-SLAPP (strategic lawsuit against public participation) motion. (See Code Civ. Proc., § 425.16, subd. (i) [order granting or denying special motion to strike is an appealable order].) Plaintiff and appellant Shirlee Kemps contends the trial court erred in concluding that the anti-SLAPP statute was applicable to her second amended complaint and that she had not established a probability she would prevail on the merits of her causes of action. Kemps's lawsuit stems from her arrest on a bench warrant arising from her alleged failure to appear as a subpoenaed witness. We will conclude the court did not err and, accordingly, will affirm the order striking the complaint.

## Facts and Procedural History

Defendant and respondent Richard A. Beshwate represented a defendant, Timothy Young, in a multiple-murder case in Tulare County. As part of the defense case, Beshwate sought to show that Young had been at a medical examination with Dr. Charles Heller on the day of the murders.

Kemps is the owner of Sierra Valley Medico, Inc., apparently a company providing medical examinations in workers' compensation cases. The company employed Dr. Heller and other physicians to perform the medical examinations. Kemps was the custodian of records for Dr. Heller.

Beshwate hired defendant and respondent S.K. Nelson & Company, owned by defendant and respondent Scott Nelson (collectively, Nelson), to perform investigative services in connection with his representation of Young. Nelson, in turn, hired defendant and respondent Ronald Richard Weber to perform some of those services.

What happened next is in dispute. Respondents contend, in essence, that they thought Kemps was the office manager for Dr. Heller, that various of them spoke to Kemps prior to the trial, and that Weber served her with a trial subpoena. While initially cooperative, according to respondents, as trial drew near Kemps began to demand $150 per hour for her time attending the trial. When respondents declined to pay, Kemps failed to appear for trial.

Kemps, on the other hand, contends she never spoke to anyone about her own participation as a witness and was never served with a subpoena (although she did eventually testify at Young's trial that she had "received

subpoenas to be here on many occasions"). She contends she was not even in her office at the time Weber's proof of service states she was served with the subpoena and, in any case, she would not have been identified as the "office manager," even if she had been present. Kemps contends she did not know she was supposed to be a witness.

The parties agree, however, that when Kemps failed to appear to testify, Beshwate applied for and obtained a warrant for her arrest. She was arrested by Fresno police on December 6, 2005, and held in custody for several hours. She agreed to appear for the Young trial later that day. She did so and provided testimony concerning Young's medical appointment with Dr. Heller.

Kemps filed a second amended complaint for abuse of process, intentional infliction of emotional distress, and negligent infliction of emotional distress. Nelson filed a special motion to strike pursuant to Code of Civil Procedure section 425.16.[1] Weber and Beshwate joined in the motion. Kemps opposed the motion, contending that respondents' conduct was not protected activity because it was unlawful as a matter of law. She also contended she had a probability of prevailing in the action because the litigation privilege of Civil Code section 47, subdivision (b), did not apply to immunize conduct directed at nonparties.[2] The court issued a tentative decision granting the special motion to strike. Kemps did not request a hearing, and the court entered its order striking the second amended complaint.

Kemps filed a timely notice of appeal.

## Discussion

■ Code of Civil Procedure section 425.16 seeks to provide an early and inexpensive procedure by which a defendant can obtain dismissal of a meritless cause of action "arising from any act of that person in furtherance

---

[1] A special motion to strike is authorized when a defendant contends an action is a so-called SLAPP lawsuit. Code of Civil Procedure section 425.16, subdivision (b)(1) provides for dismissal of a cause of action arising from constitutionally protected petition or free speech activities "unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

[2] Civil Code section 47, subdivision (b), provides an absolute privilege for, among many others and with some exceptions, publications made in any judicial proceeding. (See *Flatley v. Mauro* (2006) 39 Cal.4th 299, 322 [46 Cal.Rptr.3d 606, 139 P.3d 2].)

of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (Code Civ. Proc., § 425.16, subd. (b)(1).) Such acts include "any written or oral statement or writing made before a legislative, executive, or judicial proceeding . . . ." (*Id.*, subd. (e)(1).)

A defendant who files a special motion to strike must make an initial showing that the challenged cause of action is one arising from protected activity. If such a showing is made, the burden shifts to the plaintiff to establish that there is a probability the plaintiff will prevail on the merits of the cause of action. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 [124 Cal.Rptr.2d 530, 52 P.3d 703].)

A defendant cannot establish that a cause of action arises from conduct in furtherance of the rights of petition and free speech if the conduct is not protected by either of those rights. In particular, where "the defendant concedes[] or the evidence conclusively establishes[] that the assertedly protected speech or petition activity was illegal as a matter of law, the defendant is precluded from using the anti-SLAPP statute to strike the plaintiff's action." (*Flatley v. Mauro, supra*, 39 Cal.4th at p. 320.) Thus, in some instances, a defendant's illegal conduct ultimately may be protected by the litigation privilege of Civil Code section 47, subdivision (b), but the defendant is not entitled to employ the special motion to strike to obtain an early dismissal of the cause of action because the conduct, while protected by statute, is not constitutionally protected petition or free speech. (39 Cal.4th at p. 324.)

Appellant contends respondents' conduct in filing a false proof of service and declaration to obtain the bench warrant that resulted in appellant's arrest was illegal conduct as a matter of law and that, accordingly, respondents were not entitled to invoke the special motion procedure. We reject that characterization of respondents' conduct.

If appellant's version of the events leading up to her testimony at the Young trial is correct, it may be that some portion of the conduct of the various respondents was illegal. Respondents' version of events, to the contrary, would establish, at most, innocent confusion concerning the individual to whom some of them had spoken—that is, they may have wrongly assumed they were speaking to appellant—and attachment of incorrect documents to the declaration in support of the application for warrant. As

appellant acknowledged in her trial testimony, she had received several subpoenas for the Young trial; respondents may have innocently attached the wrong one to the declaration.

Respondents categorically deny any illegal conduct, and the evidence is in conflict concerning the events in question. Thus, while it is not impossible that a finder of fact could resolve all of the conflicts in the evidence in favor of appellant and conclude as a *matter of fact* that some portion, possibly all, of respondents' conduct was illegal, the state of the evidence does not establish that the conduct was illegal as a *matter of law*. Accordingly, the trial court correctly concluded respondents made the threshold showing that appellant's causes of action arose from respondents' exercise of constitutionally protected conduct in a judicial proceeding.

Appellant next contends that, although respondents' conduct was the kind of conduct usually privileged by Civil Code section 47, subdivision (b) (see *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1062 [39 Cal.Rptr.3d 516, 128 P.3d 713]), the conduct was not privileged here because appellant was not a party to the litigation in which respondents' conduct occurred. Appellant contends: "No case stands for the proposition that the litigation privilege is applicable and gives immunity to those who file false and perjurious documents which lead to harming non-parties by their arrest and incarceration."

 Appellant's focus on her "non-party" status is misguided in two ways. First, while not parties to a case, witnesses in a particular case are subject to legal process, compelled attendance, and the duty to testify truthfully. (See Pen. Code, § 1331, providing, in part ["Disobedience to a subpoena, or a refusal to be sworn or to testify as a witness, may be punished by the Court or magistrate as a contempt"]; see generally *Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1504 [57 Cal.Rptr.2d 406] [dicta].) Thus, while witnesses are not parties and may have no personal stake in the outcome of litigation, they are direct and important participants in litigation. Second, appellant was indeed a party in the *proceeding to have her arrested* and brought before the court to testify: she was the individual named in the arrest warrant and had the rights of persons accused of contempt of court. (Although she claims she had no opportunity to vindicate the wrong done to her, the warrant here was apparently recalled when she agreed to appear as a witness.)

 In any event, it is settled California law that the absolute privilege from tort liability, except for claims of malicious prosecution, established by

Civil Code section 47, subdivision (b), applies to statements made to the authorities in order to obtain the arrest of a person, even where that person has no connection whatsoever to any pending litigation. (See *Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 361–367 [7 Cal.Rptr.3d 803, 81 P.3d 244] (*Hagberg*).)

The *Hagberg* opinion cited as the leading case in this area the Court of Appeal decision in *Williams v. Taylor* (1982) 129 Cal.App.3d 745 [181 Cal.Rptr. 423] (*Williams*). (See *Hagberg, supra,* 32 Cal.4th at p. 364.) In *Williams,* an employer contacted the police to report suspected theft by an employee. The employee was arrested, charged, tried, and acquitted on various resulting charges. The *Williams* court held that the employee's subsequent tort action against the employer was barred by the absolute (that is, without regard for any malice or unlawful intent on the part of the employer) privilege of Civil Code section 47, subdivision (b). (*Williams, supra,* at pp. 753–754.)

In *Hagberg,* bank officials summoned police and accused Hagberg of presenting a forged check. In the course of a thorough survey of earlier cases, the court concluded that Civil Code section 47, subdivision (b) "establishes an absolute privilege for statements made by a citizen who contacts the police to report suspected criminal activity." (*Hagberg, supra,* 32 Cal.4th at pp. 359–360.) Further, such privilege applies "without respect to the good faith or malice of the person who made the statement" in " 'all kinds of truth-seeking proceedings: judicial, quasi-judicial, legislative and other official proceedings.' " (*Id.* at p. 361.) The application for a bench warrant in this case is analogous to the reports to the police in *Hagberg* and *Williams.* As in those cases, the litigation privilege insulates respondents from tort liability for their actions.

■ The right to compel the attendance at trial of witnesses on behalf of a criminal defendant is a right specifically enumerated in both the state and federal Constitutions. (See U.S. Const., 6th Amend.; Cal. Const., art. I, § 15.) The ability of a criminal defendant to compel the attendance of witnesses is critical to presentation of a defense. To paraphrase the *Williams* court, the importance of vindicating that right to present witnesses in defense of a criminal prosecution outweighs the occasional harm that might befall an individual witness. (See *Williams, supra,* 129 Cal.App.3d at p. 754.)

■ We hold that appellant's tort claims against respondents are barred by Civil Code section 47, subdivision (b). Accordingly, appellant has failed to demonstrate she probably would prevail in the present action.

## Disposition

The order striking the second amended complaint is affirmed. Respondents are awarded costs on appeal. Respondents' request for sanctions on appeal is denied.

Cornell, J., and Gomes, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 18, 2010, S180142. George, C. J., did not participate therein.