Filed 7/26/21  Tye v. Papp CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| MATTHEW TYE, | |
| Plaintiff and Appellant, | E075153 |
| v. | (Super.Ct.No. RIC1904721) |
| ERIC PAPP et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Randall S. Stamen, Judge.  Affirmed

Matthew Tye, in pro. per., for Plaintiff and Appellant.

Law Offices of Erika Peterson and Erika Peterson, for Defendants and Respondents.

While litigating a civil case in Superior Court, the plaintiff filed this case against one of the defendants and his lawyer.  The plaintiff alleged that the respondents had defamed him through a declaration seeking terminating sanctions in the first case and had abused the court process through certain discovery requests that the court had permitted.

1

In this case, the trial court granted the defendants' special motion to strike the complaint pursuant to Code of Civil Procedure section 425.16 (section 425.16), commonly referred to as an anti-SLAPP motion. (SLAPP is an acronym for strategic lawsuit against public participation.) Finding this case squarely covered by our state's anti-SLAPP statute, we affirm.

## I. BACKGROUND

Plaintiff and appellant Matthew Tye brought this action to claim defamation and abuse of process in an earlier, and pending, case. Tye, a disbarred attorney, has been representing himself in both actions. In the first case, Tye sued defendant and respondent Justin Tye, along with several other defendants, on a theory that he was defrauded in a real estate investment scheme. Defendant and respondent Eric Papp, an attorney, represented Justin Tye in that case. (References to Tye are to plaintiff and appellant Matthew Tye.)

In the earlier case, Papp sought terminating sanctions against Tye. To that end, Papp filed a declaration that alleged several types of arguably sanctionable conduct by Tye. First, Papp claimed that Tye had attempted to manipulate the proceedings by purposely failing to appear at a trial setting conference in order to delay the case, and that Tye then filed a declaration containing falsehoods, which he failed to serve on any party to forestall opposition to his assertions. Secondly, Papp alleged that while Tye had been purporting to represent only himself, he actually was suing (in part) to recover funds that belonged to another. Thirdly, Papp claimed that Tye transferred some of that other

2

person's funds from Tye's own account to his girlfriend's account, so that Tye would appear indigent for the case. In support of all these allegations, Papp sought judicial notice of a number of documents.

Also in the investment fraud case, Papp sought the testimony of Tye's girlfriend. The trial court granted Papp's motion to compel Tye to answer interrogatories that would provide the girlfriend's contact information. The court rejected Tye's claim that the requests were unwarranted, stating that "there is no evidence of harassment," and that the girlfriend "may in fact have some knowledge and information regarding this case." The court stated that the girlfriend admitted that she was involved with communications at issue, and that she made a loan to one of the defendants, an entity. The court noted that there was evidence the girlfriend had been evading service of a deposition subpoena.

In his verified complaint in this case, Tye alleged that he was defamed by Papp's statements in his declaration, and that the efforts to seek his girlfriend's testimony constituted an abuse of process. The trial court granted Papp and Justin Tye's anti-SLAPP motion. Tye then took this appeal.

## II. DISCUSSION

The anti-SLAPP statute provides a means for "weeding out, at an early stage" meritless claims that arise from the exercise of constitutionally protected rights of petition or speech. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).) Determining whether to grant an anti-SLAPP motion to strike involves two steps.

3

First, the defendant must establish that the claim arises from protected activity as section 425.16 defines it. (*Baral*, *supra*, 1 Cal.5th at p. 384.) The Legislature deemed four categories of acts protected, and the first two matter to the claims in this appeal. The first category includes "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law." (§ 425.16, subd. (e)(1) (subdivision (e)(1)).) The second category covers "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." (Section 425.16, subd. (e)(2) (subdivision (e)(2)).)

If the defendant makes the required showing that the case arises from protected activity, at the second step "the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral*, *supra*, 1 Cal.5th at p. 384.) To satisfy this burden, the plaintiff must state and substantiate a legally sufficient claim. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 741.) That is, the plaintiff "'"must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."'" (*Ibid.*)

The grant or denial of an anti-SLAPP motion is reviewed de novo. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067.)

*A.  Protected Activity*

We have no pause in concluding that Tye's claims arise from protected activity as defined by subdivision (e)(1) and subdivision (e)(2).  The defamation claim was based on statements made before a judicial body, and the abuse of process claim was based on statements made in connection with issues under consideration by a judicial body.

Both causes of action are founded on litigation activity.  As our Supreme Court has recognized, a cause of action arising from a defendant's litigation activity may appropriately be the subject of an anti-SLAPP motion.  (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056 (*Rusheen*).)  The acts protected by the statute "include[] communicative conduct such as the filing, funding, and prosecution of a civil action."  (*Ibid.*)  That includes acts by attorneys in representing clients in litigation.  (*Ibid.*)  "Under the plain language of section 425.16, subdivision (e)(1) and (2), as well as the case law interpreting those provisions, all communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding or other petitioning context are per se protected as petitioning activity by the anti-SLAPP statute."  (*Cabral v. Martins* (2009) 177 Cal.App.4th 471, 479-480.)

The defamation cause of action in Tye's complaint in this case arises from written statements made in a judicial proceeding as defined by subdivision (e)(1) and thus is covered by the anti-SLAPP statute.  The only statements identified in the defamation cause of action were made in Papp's declaration filed in an active civil case as part of an effort to obtain terminating sanctions.  (See, e.g., *Zucchet v. Galardi* (2014) 229

5

Cal.App.4th 1466, 1477 [trial testimony is covered under section 425.16, subdivision (e)(1)]; *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton, LLP* (2005) 133 Cal.App.4th 658, 671 [subdivision (e)(1) covers the opposition to effort to appoint a receiver in a lawsuit].)  In his opening brief, Tye does not address subdivision (e)(1).[1] Papp's declaration statements are plainly covered by the anti-SLAPP statute under this subdivision.

Tye instead directs his argument about the defamation claim exclusively to subdivision (e)(2), claiming that the statements in the declaration were not made in connection with an issue "'under consideration'" by a judicial body.  This inquiry does not matter because the statements were made in the judicial proceeding and thus were covered by subdivision (e)(1).  Had Papp made the same statements outside of the proceeding, then an analysis under subdivision (e)(2) would be necessary.  We note that when statements are made in a declaration filed in a case, an opponent such as Tye can respond to them in his own filing.

The acts that support Tye's abuse of process cause of action were the written interrogatories and deposition subpoenas issued to obtain discovery from a witness (his girlfriend) in Tye's investment fraud case.  Those statements were certainly made in connection with an issue under consideration by a judicial body, which included whether

---

[1]  In his reply brief, Tye notes that to be covered by the litigation privilege a statement made in a judicial proceeding must have some reasonable relevancy to the subject matter of the litigation, citing *Silberg v. Anderson* (1990) 50 Cal.3d 205, 220 (*Silberg*).  This is true as to the scope of the litigation privilege but not as to subdivision (e)(1).

fraud occurred and whether Tye can obtain compensation. Thus, they clearly are protected by subdivision (e)(2).

Tye argues that the discovery was not properly sought. He claims that the girlfriend was "clearly not a witness" and "has no discoverable information." Thus, he claims the interrogatories and deposition efforts were harassing and "intended to cause distress." However, the interrogatories (seeking the girlfriend's contact information to serve a subpoena) and deposition subpoena (to obtain her testimony) were routine civil discovery that a plaintiff bringing a lawsuit must comply with.

Tye's girlfriend admitted that she made a loan to GF Services LLC, a defendant in Tye's investment fraud case, and she admitted she was paid back. That relates to understanding whether and when fraud occurred with regard to investments in GF Services LLC, regardless of what a complete understanding of her transactions shows. In seeking testimony from Tye's girlfriend, Papp also clearly was attempting to develop evidence to attack Tye's credibility in several ways (including based on whether he had filed a false fee waiver request), and a party-witness's credibility is almost always at issue in a case. After Tye attempted to avoid the discovery from his girlfriend, the trial judge granted a motion to compel, ordering a response and finding that she may have information. If Tye is correct that she has no discoverable testimony, then that would be made clear at her deposition, even though the Code of Civil Procedure defines discoverable information broadly. (See Code Civ. Proc., § 2017.010 [discoverable information can be either "itself admissible in evidence or appear[] reasonably calculated

7

to lead to the discovery of admissible evidence"].)  But the discovery requests themselves are written statements made in connection with issues before a judicial body and thus covered by subdivision (e)(2).

Tye also attempts to characterize the discovery efforts as "dispatching process servers" to obtain testimony from his girlfriend rather than as communicative activity that is protected by the anti-SLAPP statute.  This is not the gravamen of the complaint, which focuses on the "use of deposition subpoenas and related discovery" to obtain testimony from the girlfriend, as well as a "motion to compel a deposition" from her, though it does allege "intentionally serving a bad address" as part of the purported abuse of process. The physical act of serving the subpoena simply was an act in service of the communicative discovery requests, including the subpoena itself, that were the gravamen of the complaint.

Both causes of action arise from acts protected by the anti-SLAPP statute.

## B.  *Reasonable Probability of Prevailing*

The litigation privilege, codified at Civil Code section 47, subdivision (b), provides that a "'publication or broadcast'" made as part of a "'judicial proceeding'" is privileged.  (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241.)  "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action."  (*Silberg*, *supra*, 50 Cal.3d at p. 212.)  "The

requirement that the communication be in furtherance of the objects of the litigation is, in essence, simply part of the requirement that the communication be connected with, or have some logical relation to, the action, i.e., that it not be extraneous to the action.  A good example of an application of the principle is found in the cases holding that a statement made in a judicial proceeding is not privileged unless it has some reasonable relevancy to the subject matter of the action." (*Id.* at pp. 219-220.)  The principal purpose of the litigation privilege is to afford litigants and witnesses freedom of access to the courts without fear of a subsequent derivative tort action.  (*Id.* at p. 213.)  To achieve this purpose, courts have given the litigation privilege a broad interpretation.  (*Action Apartment Assn., Inc.*, *supra*, 41 Cal.4th at p. 1241.)

"Because the litigation privilege protects only publications and communications, a 'threshold issue in determining the applicability' of the privilege is whether the defendant's conduct was communicative or noncommunicative.  [Citation.]  The distinction between communicative and noncommunicative conduct hinges on the gravamen of the action.  [Citations.]  That is, the key in determining whether the privilege applies is whether the injury allegedly resulted from an act that was communicative in its essential nature." (*Rusheen*, *supra*, 37 Cal.4th at p. 1058.)  When based on a communicative act, the privilege "extends to those noncommunicative actions which are necessarily related to that communicative act." (*Id.* at p. 1052.)

Papp's statements in his declaration filed in Tye's fraud case are shielded by the litigation privilege.  A declaration "functions as written testimony" and is "exactly the

9

sort of communication the privilege is designed to protect." (*Pollock v. University of Southern California* (2003) 112 Cal.App.4th 1416, 1430-1431 [noting that declaration is protected by the privilege even if it is perjurious]; *Holland v. Jones* (2012) 210 Cal.App.4th 378, 382 [litigation privilege bars defamation action because it was based on statements "whether true or false or made with malice or without it, in her declaration in [court] proceedings [that] fall squarely within the litigation privilege. They are communications made in a judicial proceeding by a litigant to achieve the objects of the litigation with some connection to the action."].) Moreover, given that Papp filed the declaration in seeking terminating sanctions against Tye, Papp's statements (whether true or not) that Tye was engaging in allegedly criminal or fraudulent behavior were clearly relevant to the issue then before the trial court.[2]

Likewise, the use of discovery to obtain testimony from Tye's girlfriend is protected by the litigation privilege. (See *Mallard v. Progressive Choice Ins. Co.* (2010) 188 Cal.App.4th 531, 543-544 [discovery subpoenas protected by the privilege].) While

---

[2] Tye's reliance on *Nguyen v. Proton Technology Corp.* (1999) 69 Cal.App.4th 140 (*Nguyen*) is unpersuasive. In *Nguyen*, the plaintiff worked at one company before leaving for a rival company. (*Id.* at p. 143.) The first company plaintiff worked for, Proton, "became concerned that [the rival company] was improperly soliciting [Proton's] employees and customers." (*Ibid.*) This ultimately resulted in Proton sending the rival company a letter stating, among other things, its concern that the rival was engaging in unfair competition and that the plaintiff "was in prison for repeatedly and violently assaulting his wife." (*Id.* at pp. 143-144.) The plaintiff, who had not been convicted of those crimes, sued Proton, and the Court of Appeal held that Proton's statement regarding his criminal record was not protected by the litigation privilege. (*Id.* at pp. 143, 145.) The court characterized the supposed connection between the plaintiff's criminal record and Proton's concern about unfair competition as "border[ing] on the specious." (*Id.* at p. 151.) Here however, Papp's statements related to whether Tye had engaged in sanctionable conduct, and thus *Nguyen* is distinguishable.

the discovery requests were not issued in the courtroom, the privilege "applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved." (*Silberg*, *supra*, 50 Cal.3d at p. 212.)

The interrogatories and deposition subpoena were geared toward obtaining testimony from the girlfriend, and they were found proper by the trial court, which granted a motion to compel that discovery because it was related to the objects of the litigation. Compelling a witness to testify is clearly covered by the litigation privilege. The Court of Appeal has even held that the litigation privilege bars tort claims based on an attorney's applying for and receiving a bench warrant for the arrest of a witness who failed to appear to testify, even if, as alleged, the attorney filed a false declaration to do so. (*Kemps v. Beshwate* (2009) 180 Cal.App.4th 1012, 1016-1018.) Because the litigation privilege shields standard discovery requests, Tye cannot succeed on his claim of abuse of process that is based on the interrogatories and deposition subpoenas issued to obtain his girlfriend's testimony.

Apart from the litigation privilege, Tye also cannot show that there has been an act created in a "wrongful" manner as necessary for an abuse of process claim, where the discovery sought from his girlfriend was authorized by the court after a motion to compel. (*State Farm Mutual Automobile Insurance Co. v. Lee* (2011) 193 Cal.App.4th

11

34, 40-41 [no abuse of process claim for deposition questioning where the discovery was authorized by law, even if there was an "ulterior motive" for the discovery].)

For these reasons, Tye cannot show a probability of success on either of his causes of action.

### III.  DISPOSITION

The trial court's order granting respondents' anti-SLAPP motion is affirmed. Respondents are to recover their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL
J.

We concur:

MILLER
Acting P. J.

MENETREZ
J.