Filed 1/18/23  USA English Language Center v. Sacco-Cooke Unlimited CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| USA ENGLISH LANGUAGE CENTER, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> SACCO-COOKE UNLIMITED, LLC et al., <br><br> Defendants and Respondents. | D079608 <br><br><br> (Super. Ct. No. 37-2018-00065588-CU-BT-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge.  Affirmed.

Law Offices of David C. Beavans and David C. Beavans for Plaintiff and Appellant.

Paul, Plevin, Sullivan & Connaughton; Quarles & Brady, Sandra L. McDonough, and Ryan J. Evans for Defendants and Respondents.

I

INTRODUCTION

Plaintiff USA English Language Center, Inc. (the Language Center) appeals an order granting a special motion to strike filed under the anti-

SLAPP statute (Code Civ. Proc., § 425.16; further undesignated statutory references are to the Code of Civil Procedure) by defendants Sacco-Cooke Unlimited, LLC dba Connect English Language Institute (Connect English), Nicholas Sacco, Adam Cooke, and Christopher Hill.[1]  We affirm.

II

BACKGROUND

A. *The Complaint*

The Language Center is a private postsecondary education institute that offers English language instruction programs in San Diego.  Connect English is a competitor offering similar programs in the same market.  Sacco, Cooke, and Hill are Connect English employees.

The Language Center and an affiliated entity (together, the plaintiffs) filed a lawsuit against Doe defendants 1–100, four of whom were subsequently identified as Connect English, Sacco, Cooke, and Hill.  The operative first amended complaint pleaded causes of action against all of the named defendants for violations of the Unfair Competition Law (Bus. & Prof. Code, § 17200; the UCL), intentional interference with contractual relations, and intentional interference with prospective economic advantage, and it pleaded a fourth cause of action for trade libel against the individual defendants.

The operative complaint alleges the defendants violated the UCL by: (1) making disparaging, in-person statements about the Language Center to current and prospective students, including statements that the Language Center charges illegal fees to students, offers poor educational instruction, and operates a "visa mill," (2) making similar disparaging statements on

---

[1]     SLAPP is an acronym that refers to a Strategic Lawsuit Against Public Participation.  (*Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1242.)

2

publicly-accessible websites, (3) accessing the private information of Language Center students without authorization; (4) enrolling at the Language Center to misappropriate its trade secrets; and (5) lodging false complaints with the Accrediting Council for Continuing Education and Training (the Accrediting Council) and the Student and Exchange Visitor Program (the Exchange Program) about the Language Center's alleged failure to comply with those entities' regulations. The Accrediting Council is a federally-recognized accrediting agency that provided institutional accreditation to the Language Center. The Exchange Program—a program overseen by U.S. Immigration and Customs Enforcement—provides schools with the certification necessary to enroll foreign nonimmigrant students.[2] (8 C.F.R. § 214.3.)

The causes of action for interference with contractual relations and interference with prospective economic advantage incorporated these allegations and further alleged the defendants committed their "wrongful acts" to interfere with the Language Center's relationships with its students and the Accrediting Council. The trade libel cause of action incorporated these same allegations. According to the operative complaint, the defendants'

---

[2]    The Language Center argues the operative complaint does not base any claim for relief on the defendants' alleged complaints to the Accrediting Council or the Exchange Program. The complaint is certainly ambiguous at times—seemingly intentionally so. But it explicitly alleges, as a claim for relief, that the defendants made "misrepresentations to potential enrollees and others," and false complaints were lodged against the Learning Center "with its accreditor" and the Exchange Program. The plaintiffs' opposition to the defendants' special motion to strike, as well as their accompanying declarations, make unmistakably clear the defendants lodged the alleged complaints with the Accrediting Council and the Exchange Program. We must consider these additional allegations in our analysis. (*Bonni v. St. Joseph Health Sys.* (2021) 11 Cal.5th 995, 1017, fn. 5 (*Bonni*).)

3

misconduct caused the Accrediting Council to deny reaccreditation to the Language Center and it caused students to end their relationships with the Language Center.

B. *The Special Motion to Strike*

The defendants filed a special motion to strike the operative complaint under the anti-SLAPP statute. They argued they satisfied their first-step anti-SLAPP burden because the plaintiffs' claims for relief were based on constitutionally-protected activities. In particular, they asserted the alleged complaints to the Accrediting Council and the Exchange Program were protected acts because they were statements made before official proceedings authorized by law (§ 425.16, subd. (e)(1)) or, alternatively, statements made in connection with official proceedings authorized by law (*id.*, subd. (e)(2)). Further, they claimed all of their alleged statements—including their statements to students—constituted protected conduct in furtherance of the exercise of the constitutional rights of petition and free speech in connection with a public issue or an issue of public interest (*id.*, subd. (e)(4)).[3]

The defendants argued the plaintiffs could not satisfy their second-step burden under the anti-SLAPP statute because they could not establish a probability of success for any of their pleaded causes of action. They argued all four pleaded causes of action were precluded to the extent they were based on complaints to the Accrediting Council and the Exchange Program because such communications were absolutely privileged under Civil Code section 47, subdivision (b)(3). They claimed the causes of action were also precluded insofar as they were based on statements to students, since the statements

_____

[3]  The defendants did not specifically argue their alleged access of private student information and enrollment at the Language Center were protected acts.

4

were subject to the common interest privilege codified in Civil Code section 47, subdivision (c). Finally, they argued the plaintiffs were unable to prove the elements of causation or damages for any of their causes of action.

The plaintiffs opposed the special motion to strike. Without differentiating between their claims for relief, the plaintiffs generally asserted the complaint was exempt from the anti-SLAPP statute because it alleged conduct that fell within the statutory exemption for commercial speech. They also argued—again, without differentiating between their claims for relief—the complaint was not subject to the anti-SLAPP statute because it alleged illegal conduct. Next, they claimed—in a one-sentence heading of their opposition brief—that the defendants' alleged misstatements were not protected acts under the anti-SLAPP statute. Finally, they argued their pleaded causes of action had at least minimal merit. Together with their opposition brief, they filed declarations from the Language Center's owner, students, and administrators, who averred they personally heard the defendants' allegedly disparaging remarks or learned about the remarks from others. The plaintiffs did not respond to the defendants' arguments concerning the Civil Code section 47 privileges.

The defendants filed a reply brief and evidentiary objections to the plaintiffs' declarations.

The trial court granted the special motion to strike in its entirety, largely for the reasons set forth in the defendants' moving papers. The Language Center (but not its co-plaintiff) appeals.

III

DISCUSSION

A. *Anti-SLAPP Framework*

5

"Enacted by the Legislature in 1992, the anti-SLAPP statute is designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern. [Citations.]  To that end, the statute authorizes a special motion to strike a claim 'arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.' " (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883–884 (*Wilson*).)

"A court evaluates an anti-SLAPP motion in two steps.  'Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected [speech or petitioning] activity in which the defendant has engaged.' " (*Wilson, supra*, 7 Cal.5th at p. 884.) "A 'claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted.' [Citation.]  To determine whether a claim arises from protected activity, courts must 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' [Citation.] Courts then must evaluate whether the defendant has shown any of these actions fall within one or more of the four categories of ' "act[s]" ' protected by the anti-SLAPP statute." (*Ibid.*)

The defendants in this case invoke three categories of protected acts. The first category applies to "any written or oral statement or writing made before … [an] official proceeding authorized by law[.]"  (§ 425.16, subd. (e)(1).) The second category encompasses "any written or oral statement or writing made in connection with an issue under consideration or review by … [an] official proceeding authorized by law[.]"  (*Id.*, subd. (e)(2).)  The third category

6

covers "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (*Id.*, subd. (e)(4).)

Sometimes, a plaintiff pleads what is colloquially known as a mixed cause of action—that is, "a cause of action that rests on allegations of multiple acts, some of which constitute protected activity and some of which do not." (*Bonni, supra*, 11 Cal.5th at p. 1010.) In such cases, courts are "not confined to evaluating whether an entire cause of action, as pleaded by the plaintiff, arises from protected activity or has merit. Instead, courts should analyze each claim for relief—each act or set of acts supplying a basis for relief, of which there may be several in a single pleaded cause of action—to determine whether the acts are protected and, if so, whether the claim they give rise to has the requisite degree of merit to survive the motion." (*Ibid.*) "When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at [the first] stage." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396.)

If the defendant makes the required showing, the " 'plaintiff must then demonstrate its claims have at least "minimal merit" ' " at the second step of the anti-SLAPP analysis. (*Wilson, supra*, 7 Cal.5th at p. 884.) This second step has been described as a summary judgment-like procedure. (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940 (*Sweetwater Union*).) At this stage, the court must determine " 'whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. [Citation.] "[C]laims with the requisite minimal merit may proceed." ' " (*Ibid.*)

7

We review a trial court order granting an anti-SLAPP motion de novo. (*Sweetwater Union, supra*, 6 Cal.5th at p. 940.)

B. *First Prong Analysis*

As discussed above, the operative complaint asserts four separately-pleaded causes of action based on five claims for relief. It asserts the defendants: (1) made in-person, disparaging remarks about the Language Center to students, (2) made similar negative statements online, (3) accessed private information of Language Center students without permission; (4) enrolled at the Language Center to misappropriate its trade secrets; and (5) lodged false complaints about the Language Center with the Accrediting Council and the Exchange Program.

On appeal, the Language Center argues two of these claims for relief fall outside the ambit of the anti-SLAPP statute. In particular, it claims: (1) the anti-SLAPP statute does not apply to the defendants' complaints to the Accrediting Council and the Exchange Program because those complaints were illegal; and (2) the commercial speech exemption applies to the defendants' in-person remarks to students.[4] Further, it asserts (3) none of

---

[4]     In its discussions of the illegality exception and the commercial speech exemption, the Language Center does not differentiate between its claims for relief—a recurrent problem that plagues both parties' briefing. However, the Language Center's illegality argument focuses in substance on the defendants' alleged complaints to the Accrediting Council and the Exchange Program, and it limits its arguments concerning the commercial speech exemption to the defendants' alleged statements to students. We respond to the Language Center's arguments as it has framed them. To the extent the Language Center intended its arguments to apply to *other* claims for relief, those arguments are waived. (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 684 (*Meridian*) ["The reviewing court is not required to develop the parties' arguments or search the record for supporting evidence and may instead treat arguments that are not developed or supported by adequate citations to the record as waived."].)

the alleged conduct was constitutionally-protected.  We address these arguments in seriatim.

### 1. *Illegality Exception*

The Language Center claims the defendants' alleged complaints to the Accrediting Council and the Exchange Program were illegal because they contained false statements of fact made in violation of federal law—specifically title 18 of United States Code section 1001, which "prohibits lying to the federal government."  (*United States v. Oliver* (9th Cir. 2022) 41 F.4th 1093, 1097.)  According to the Language Center, the defendants' conduct is not protected by the anti-SLAPP statute because it was illegal.

In *Flatley v. Mauro* (2006) 39 Cal.4th 299, the Supreme Court held that the anti-SLAPP statute does not apply to speech or petitioning activities that are illegal as a matter of law.  "The rationale is that the defendant cannot make a threshold showing that the illegal conduct falls within the purview of the [anti-SLAPP] statute and promotes section 425.16's purpose to 'prevent and deter "lawsuits [referred to as SLAPP's] brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." ' " (*Id.* at p. 316.)  However, the illegality exception applies only where "the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law[.]"  (*Id.* at p. 320.)  The plaintiff bears the burden of demonstrating illegality as a matter of law.  (*Assn. for L.A. Deputy Sheriffs v. L.A. Times Communications LLC* (2015) 239 Cal.App.4th 808, 818, fn. 10; *Cross v. Cooper* (2011) 197 Cal.App.4th 357, 385.)

The defendants do not concede that they knowingly made false complaints about the Language Center to the Accrediting Council or the Exchange Program.  On the contrary, they submitted evidence denying they

9

engaged in any such behavior. Further, they argue the alleged complaints were truthful—an argument that, if accepted, could provide them with a meritorious defense to the Language Center's contention that they violated title 18 of United States Code section 1001. (See *United States v. Castro* (3d Cir. 2013) 704 F.3d 125, 139 ["to properly convict [the defendant] of violating [18 U.S.C.] § 1001, the government must be able to show that he made a statement to government agents that was untrue, and the government cannot satisfy that burden … if in fact he told the literal truth"].)

Because the defendants do not concede illegal conduct, and the evidence does not conclusively establish illegal conduct, the Language Center has not carried its burden of showing that the illegality exception applies. (*Belen v. Ryan Seacrest Productions, LLC* (2021) 65 Cal.App.5th 1145, 1158–1159 [illegality exception inapplicable where defendants did not concede illegal conduct and evidence did not conclusively establish it]; *San Diegans for Open Government v. San Diego State University Research Foundation* (2017) 13 Cal.App.5th 76, 106 (*SDOG*) [same].)

### 2. *Commercial Speech Exemption*

Next, the Language Center argues the defendants' statements to students about the Language Center fall outside the scope of the anti-SLAPP statute under the statutory exemption for commercial speech.[5]

---

[5] Some courts refer to the commercial speech exemption as a threshold determination that must be addressed before any analysis is conducted under section 425.16. (See, e.g., *Xu v. Huang* (2021) 73 Cal.App.5th 802, 806–807.) Others refer to it as a first-prong determination conducted as part of the section 425.16 analysis. (See, e.g., *Neurelis, Inc. v. Aquestive Therapeutics, Inc.* (2021) 71 Cal.App.5th 769, 786 (*Neurelis*).) Neither party ascribes any significance to whether the commercial speech exemption is a preliminary determination or a first-prong determination. We assume without deciding the commercial speech exemption presents a first-prong determination.

In 2003, the Legislature—concerned with litigants' abuse of the anti-SLAPP statute—enacted section 425.17, which exempts certain actions from the anti-SLAPP statute. (*Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 21–22 (*Simpson*); § 425.17, subd. (a) ["The Legislature finds and declares that there has been a disturbing abuse of Section 425.16, the California Anti-SLAPP Law, which has undermined the exercise of the constitutional rights of freedom of speech and petition for the redress of grievances, contrary to the purpose and intent of Section 425.16."].) One exemption set forth in section 425.17 is the commercial speech exemption.

Section 425.17, subdivision (c), exempts from the anti-SLAPP statute a cause of action arising from commercial speech when: "(1) the cause of action is against a person primarily engaged in the business of selling or leasing goods or services; (2) the cause of action arises from a statement or conduct by that person consisting of representations of fact about that person's or a business competitor's business operations, goods, or services; (3) the statement or conduct was made either for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services or in the course of delivering the person's goods or services; and (4) the intended audience for the statement or conduct" is an actual or potential buyer or customer. (*Simpson, supra*, 49 Cal.4th at p. 30.)

The commercial speech exemption is construed narrowly and the burden of establishing its applicability rests on the party seeking to invoke it—here, the Language Center. (*Simpson, supra*, 49 Cal.4th at pp. 22–26; *Neurelis, supra*, 71 Cal.App.5th at p. 786.) We review the applicability of the commercial speech exemption independently. (*Simpson*, at p. 26.)

The parties disagree on the first requirement necessary to invoke the commercial speech exemption—that is, whether the defendants are primarily

11

engaged in the business of selling education services. We need not resolve the parties' disagreement because the Language Center has not carried its burden of demonstrating another essential requirement necessary to invoke the exemption. In particular, it has not shown that the defendants' alleged statements to students were made to promote or secure sales, or commercial transactions in, the defendants' education services.[6]

Indeed, the Language Center devotes just one fleeting sentence of its appellate briefing to this requirement, stating—without citation to the appellate record or legal authority—that the defendants made disparaging statements "to prospective or current students of Connect English to promote [the defendants'] own program over [the Language Center's] program." By failing to present a cogent argument concerning the context or purpose of the defendants' alleged misstatements, supported by citations to the record and relevant legal authority, the Language Center has waived its cursory claim that the defendants made the statements at issue for the purpose of promoting or securing sales, or commercial transactions in, their services. (*Meridian, supra*, 67 Cal.App.5th at p. 684; see *Munoz v. Patel* (2022) 81 Cal.App.5th 761, 773 [" ' "In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record." ' "].)

Waiver aside, the evidence the Language Center submitted to the trial court does not conclusively establish that the defendants' alleged statements to students were made to promote or secure sales of their purported education services. Much of the evidence the Language Center submitted to

---

[6]     The Language Center does not argue that the defendants made the allegedly disparaging statements to students in the course of delivering services. (See § 425.17, subd. (c)(1).) Therefore, we do not consider the issue.

12

the trial court consists of near-identical declarations from Language Center administrators, all of whom made the same generic averment: "Over my time working at [the Language Center] I have encountered many students whom [sic] have informed me that they were told negative statements regarding [the Language Center] by employees/faculty at Connect English." These barebones allegations are silent on whether the defendants or their agents made disparaging statements about the Language Center for the purpose of promoting or selling the defendants' education services.

The other evidence submitted to the trial court by the Language Center was similarly deficient. In one declaration, a Connect English student avers: "While I was at Connect English on or about August 4, 2017, Nick Sacco asked me where I was going to school. [¶] I said at [the Language Center], [sic] Nick Sacco told me that I should not go to school at [the Language Center] because the school is closing and it's a terrible school." Similarly, in another declaration (ostensibly filed on behalf of a student, although the declaration is not clear on this point), the declarant generally states: "On or [sic] August 25, 2016, I had a conversation with [a Connect English instructor] at Connect English. ... [¶] [He] made ... [disparaging] statements regarding ... [the] Language Center[.]" These declarations in no way show the defendants made the disparaging statements at issue to promote or sell their own education services.

"The plain language of section 425.17 requires that a plaintiff establish all of the elements of the section 425.17 exemption." (*Hawran v. Hixson* (2012) 209 Cal.App.4th 256, 273.) Because the Language Center did not submit any evidence bearing on the purpose of the defendants' alleged statements to students, they did not satisfy their burden of proving that the commercial speech exemption applies. (See *Industrial Waste & Debris Box*

13

*Service, Inc. v. Murphy* (2016) 4 Cal.App.5th 1135, 1152–1153 [commercial speech exemption did not apply because plaintiffs did not "show that defendants' purpose [in preparing a report] was to promote [their client's] services, or their own"]; *Karnazes v. Ares* (2016) 244 Cal.App.4th 344, 357 [same, where "statements made by [defendant] were not statements of fact about his services for the purpose of promoting his services"].)

>        3. *Protected Acts*

We turn now to whether the Language Center's five claims for relief fall within one or more of the categories of protected acts under section 425.16, subdivision (e). First, we address whether the claims for relief based on defendants' alleged statements to the Accrediting Council and the Exchange Program arise from protected acts. Then, we consider whether the four remaining claims for relief are predicated on protected acts.

The trial court broadly found the defendants satisfied their first-step burden. In so doing, it expressly found the defendants' alleged statements to government agencies, like the Exchange Program, were protected statements made before official proceedings authorized by law (§ 425.16, subd. (e)(1)), and they were also protected statements made in connection with official proceedings authorized by law (*id.*, subd. (e)(2)). The court did not specifically address whether the defendants' alleged statements to the Accrediting Council were protected acts.

"[I]t is a fundamental principle of appellate procedure that a trial court [order] is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the [order]." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609; see also *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [" 'A judgment or order of the lower

14

court is *presumed correct.* All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' "].) The appellant bears the burden of demonstrating prejudicial error even where, as here, the standard of appellate review is de novo. (*Balla v. Hall* (2021) 59 Cal.App.5th 652, 671.)

The Language Center does not assert that the defendants' alleged statements to the Accrediting Council or the Exchange Program were unprotected. In fact, it argues its other four claims for relief were based on unprotected acts because they were *not* based on the defendants' statements to the Accrediting Council or the Exchange Program—an implied concession that such statements *are* protected. Because the Language Center presents no argument concerning the defendants' statements to the Accrediting Council or the Exchange Program, it has forfeited any claim that such statements were unprotected acts under section 425.16, subdivision (e). (*SDOG, supra*, 13 Cal.App.5th at p. 106, fn. 17 [appellant forfeited claim that respondents' conduct satisfied public interest prong of section 425.16, subdivision (e) by failing to discuss the issue in opening brief].)

We turn now to the conduct giving rise to the remaining four claims for relief. As noted, the Language Center based these claims for relief on allegations that the defendants: (1) made insulting, in-person statements about the Language Center to current and prospective students, (2) posted similar derogatory statements about the Language Center online, (3) accessed private student information without permission; and (4) enrolled at the Language Center in order to misappropriate its trade secrets.

The Language Center argues these are not protected activities. But it did not make this argument in the proceedings below. Indeed, it made a single cursory statement—buried in a heading of its opposition brief—that

15

the defendants' conduct was "not in furtherance of defendant's [sic] right of petition and/or free speech in connection with a public issue …."

"Issues presented on appeal must actually be litigated in the trial court—not simply mentioned in passing. ' "[W]e ignore arguments, authority, and facts not presented *and litigated* in the trial court." ' " (*Natkin v. Cal. Unemployment Ins. Appeals Bd.* (2013) 219 Cal.App.4th 997, 1011 (*Natkin*); *Truck Ins. Exchange v. AMCO Ins. Co.* (2020) 56 Cal.App.5th 619, 635 (*Exchange*) [" ' "[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court." ' "].) By failing to present the trial court with any substantive argument that the defendants' alleged conduct fell outside one or more of the categories of conduct protected by the anti-SLAPP statute, the Language Center has forfeited this argument on appeal.[7]

---

[7] We asked the parties to file supplemental briefs addressing whether the Language Center forfeited its argument that its claims for relief do not arise from protected acts under section 425.16, subdivision (e).

The Language Center contends it presented this argument to the trial court at the hearing on the defendants' anti-SLAPP motion. The record proves otherwise. At the anti-SLAPP hearing, the Language Center asserted only that the alleged conduct at issue fell within the statutory exemption for commercial speech (§ 425.17). That argument is entirely different than the one the Language Center is now trying to raise for the first time on appeal.

In the alternative, the Language Center asks us to exercise our discretionary authority and consider its argument, even though it failed to make the argument to the trial court. The argument does not present a pure question of law or an important legal issue. Further, the Language Center offers no explanation for its failure to raise the argument below. Therefore, we decline the Language Center's request to consider its forfeited argument. (See *In re Marriage of Elali & Marchoud* (2022) 79 Cal.App.5th 668, 682 [" '[T]he appellate court's discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue.' "].)

16

C. *Second Prong Analysis*

"In the second step, we must determine whether plaintiff has demonstrated a probability of prevailing on the merits. To do so, plaintiff must state and substantiate a legally sufficient claim [citation], thereby demonstrating his case has at least minimal merit [citation]. [¶] 'Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' " (*Finton Construction, Inc. v. Bidna & Keys, APLC* (2015) 238 Cal.App.4th 200, 211.) "[A]t the second stage of an anti-SLAPP hearing, the court may consider affidavits, declarations, and their equivalents if it is reasonably possible the proffered evidence set out in those statements will be admissible at trial." (*Sweetwater Union, supra*, 6 Cal.5th at p. 949.)

The Language Center makes just one argument that it satisfied its step-two burden. It claims it made a prima facie showing sufficient to overcome a substantive defense applicable to all four causes of action—that is, the defendants' defense that their alleged complaints to the Accrediting Council were absolutely privileged or subject to the common interest privilege codified in Civil Code section 47. The Language Center argues it made the necessary showing because its administrators submitted declarations averring that the defendants complained to the Accrediting Council about the Language Center. It also notes that its students filed declarations alleging that complaints were lodged in their names, but without their knowledge or consent. According to the Language Center, this evidence, accepted as true, proves the defendants made false representations in violation of title 18 of United States Code section 1001. The Language Center further argues— without citation to legal authority—that the illegality of the defendants'

17

alleged misconduct precludes them from relying on the Civil Code section 47 privileges.

In their special motion to strike, the defendants argued that the Civil Code section 47 privileges precluded the Language Center from satisfying its step-two burden. However, the Language Center did not mention—let alone try to rebut—the defendants' privilege defense in its brief in opposition to the special motion to strike. Because the Language Center did not address the defendants' privilege defense in its trial court briefing, it has waived its privilege defense arguments on appeal.

Further, the Language Center did not merely fail to address the privilege defense; the Language Center *agreed* with the defense at the hearing on the special motion to strike. In advance of the hearing, the court issued a tentative ruling finding that complaints filed with government agencies were protected by the absolute privilege and complaints submitted to the Accrediting Council were protected by the common interest privilege. Then, at the subsequent hearing, the court asked the Language Center's legal counsel whether he "agree[d] with the court … in [its] analysis that the information provided to the government agencies would be privileged." The Language Center's counsel unambiguously replied, "Your Honor, yes." Later in the hearing, the court summarized the issues in dispute and again asked the Language Center's counsel whether he "agree[d] with [the court] on the governmental entities." Counsel responded, "Yes."

By failing to address the defendants' Civil Code section 47 privilege arguments in its trial court briefing—and, in fact, agreeing with those arguments at the hearing on the special motion to strike—the Language Center has waived its argument that it made a prima facie showing

18

necessary to rebut the defendants' privilege defense.[8] (*Natkin, supra*, 219 Cal.App.4th at p. 1011; *Exchange, supra*, 56 Cal.App.5th at p. 635.)

The Language Center does not address each essential element of its four pleaded causes of action, let alone the evidentiary showing it made in the trial court that, if accepted as true, would establish each necessary element. Nor does it make any other cogent argument that it satisfied its step-two burden. Thus, the Language Center has not met its appellate burden of establishing that the trial court committed reversible error when it found that the Language Center failed to satisfy its step-two burden.

## IV

## DISPOSITION

The order granting the special motion to strike is affirmed. Respondents are entitled to their appellate costs.

---

[8] Because the Language Center waived its privilege defense arguments, we do not assess the admissibility of the Language Center's declarations or the effect of the trial court's failure to rule on the defendants' evidentiary objections. Further, we do not decide whether the Civil Code section 47 privileges could apply to the Accrediting Council and Exchange Program complaints notwithstanding the alleged illegality of the defendants' conduct. (But see *Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 119, fn. 8 [" '[C]ommunications made in connection with litigation do not necessarily fall outside the [Civil Code section 47] privilege simply because they are, or are alleged to be, fraudulent, perjurious, unethical, or even illegal.' "]; *Kemps v. Beshwate* (2009) 180 Cal.App.4th 1012, 1017 ["a defendant's illegal conduct ultimately may be protected by the litigation privilege of Civil Code section 47, subdivision (b)"].)

19

McCONNELL, P. J.

WE CONCUR:

O'ROURKE, J.

BUCHANAN, J.